Your argument first this morning in Case 11-1059, Genesys HealthCare v. Symczyk. Mr. Mann. Thank you, Mr. Chief Justice, and may it please the Court. The decision of the Court of Appeals deprives a defendant of the ability to free itself from litigation, even when it is willing to pay complete relief to the sole plaintiff. Thus, as long as the plaintiff refuses to accept full and complete repayment, a putative collective action must continue onward to certification. Did that offer include admission of liability, or was it just that it was going to pay the amount of damages requested? That's a good question, Justice Ginsburg. Because it was an offer of judgment, if the offer had been accepted, the result would have been a judgment by the Federal court imposing liability under the statute, under the Fair Labor Standards Act, on the defendant and requiring the defendant to pay full and complete relief, including costs and attorney's fees, to the plaintiff. So there would have been a judgment of a Federal court imposing liability under the statute. Ginsburg. So if there were judgment of liability, then that would be preclusive for all other people similarly situated? Well, I think there's rules of issue and claim preclusion that would flow from the judgment and it would have. So the next case is another employee who claims uncompensated work time, and that's brought on behalf of similarly situated people. In that next case, the employer would be subject to summary judgment because the liability has been established. Well, there would be a variety of fact questions that would have to be resolved to determine the extent of the preclusion from the first judgment. But the rules of issue and claim preclusion would apply to the extent those rules call for matters that were comprehended within the judgment to bind, in a later case they would. I think the way that I would put it, looking back to Justice Kagan's opinion in the Smith v. Bayer case, it's common for there to be preclusive effect of a judgment in one case against people that are not parties. And this would have been a judgment imposing liability under the Fair Labor Standards Act based on the allegations made in the complaint. And that's preclusive. Sotomayor, so what am I to make of your transmittal letter, which says in the offer itself, that JA 5556, that Petitioners make clear that the offer of judgment, quote, was not to be construed as an admission that Petitioners are liable in this action or that Respondent has suffered any damage? What are we to make of that when you're now claiming that you would have accepted a judgment of liability? Well, I don't think that you have to rely on my statements here to say that we would have accepted a judgment of liability at that time. The offer itself is a formal offer of judgment on a form promulgated by the trial court. The offer itself is not an admission of liability. The offer itself is not a judgment against the defendant. The offer is a statement that, under the ordinary rules for Rule 68, if they accept the offer, there would be a judgment against our clients. Sotomayor, what about the $7,500? That's detailed later in the Joint Appendix at pages 77 to 79, but essentially what our client did is they took the amount of time for breaks during the Respondent's period of employment and offered her full wages for all of the break time so that whatever amount of break time was appropriately charged for her. I see in the FLSA that it also requires an amount for liquidated damages. Did you include that amount as well? Yes, Your Honor. Yes, Justice Sotomayor. Counsel, what if the district court, this proceeding is forwarded, you file the suggestion of mootness, whatever, and the judge says, I have this suggestion of mootness. I also want to address the certification issue. The mootness argument is scheduled for 3 months down the road. The certification issue for 2 months down the road. Isn't this just a question of what order the district court wants to address these two issues? Okay. So there's two things I want to say about that. The first is to talk about what happened in this particular case, which is the case that's before the court, and the second is to discuss the practical consequences of what could have happened in some other case. So what happened in this case is that it was uncontested that the offer provided complete relief, and so the Respondent suffered a judgment to be entered against her because of the conceded adequacy of the offer. And at the time that judgment was entered, nothing had been done about certification. At the time the offer was entered, had made, nothing had been done about certification. So what we think was not possible for anything to be done about the certification because you moved immediately. The complaint is filed, and then you moved and then you immediately offered the judgment that you did. Well, I think there's two questions to unpack here that are implicit in both what the Chief Justice is commenting on and what you're commenting on, Justice Ginsburg. One is the question that was presented in the petition, which is, what is the effect on a collective action if, before certification or any motion for collective process has been determined, the sole plaintiff loses an inch in the case? The second one is, how do you deal with the housekeeping issues of terminating the interest of a plaintiff when there's no longer controversy between the plaintiff and the defendant? And so the plaintiff's individual claims have been fully satisfied, but the plaintiff continues to want to represent other individuals. But here, the plaintiff's individual claims had not been fully satisfied, but the plaintiff She walked away with nothing. She walked away with no judgment, and she walked away with no $7,500. And the question is, how can it possibly be that her individual claim was moot? Okay. So I think there's two – again, there's two things to say. One is, we view that as a housekeeping question because it seems to us clear that if the defendant no longer wishes to contest liability and formally offers to pay all of the relief that the person could possibly win in any form of litigation, it has to be the case that the individual's interest is moot. Now, it might be that the appropriate response is, as is consistently the law in the Third Circuit, is that the district court should just dismiss the case because if the person won't take yes for an answer, the Federal court doesn't need to do anything more than that. Ginsburg. But there's nothing in Rule 68 that you're basing the – your position on a rule that provides as the only sanction if the plaintiff continues and gets less than the offer of proof, then the plaintiff has to pay the cost. Rule 68 doesn't say anything about dismissing suits. I don't think our position depends on Rule 68 at all for the mootness. Our position for the mootness is that if there's no further controversy about the relief that is created by the cause of action, there's nothing more for the trial court to do. Kennedy. Kennedy. Let me ask you just this question. Just tell me as a matter of common practice. Do district courts enter judgments against plaintiffs routinely when a full offer of settlement has been made and the defendant just is silent? I mean, does this happen? I just can't remember seeing it, but this, it may be that it's common practice if the plaintiff doesn't reply and there's an offer that's filed with the court, the court says I haven't heard anything, I'm going to enter judgment. I think that the courts of appeals have taken a variety of approaches to what I'm characterizing as a housekeeping question of if there's no further controversy between the plaintiff and the defendant, how do we move the case off our docket? One approach, which is followed by some of the courts of appeals, is that you enter a judgment against the plaintiff whether they like it or not. A judgment in favor of the plaintiff. Kennedy. You enter a judgment in favor of the plaintiff. Let me just be clear, in favor of the plaintiff, whether they want a judgment or not, you say here's everything you asked for, you must take it. Another approach is to say if they're willing to give you everything to which you're entitled and you won't take it, then there's no reason why we should continue to adjudicate your case because there's not really a controversy. Kagan. Well, here's what the Court said last, in Knox, last year, when it said what makes a case moot. It says a case becomes moot when it's impossible for a court to grant any effectual relief whatever to the prevailing party. Now, here the judge says, okay, is this case moot? Well, it's not moot because I could give, at the very least, I could give the plaintiff $7,500. But I didn't give the plaintiff $7,500, so she still has her claim for at least $7,500. Regardless of the collective side of this action, I mean, she hasn't been satisfied. Okay. So let me respond to that. I think Knox flows naturally from Friends of the Earth, and I think they're both saying exactly the same thing. And the what's going on in those cases, and I suppose in the Nike case from last month, is this general problem of a defendant has faced a piece of litigation and they no longer wish to contest it. If the action seeks prospective relief, it's quite difficult, once the case has begun, for the defendant to convince the court that they are going to change their conduct in a way that moots the claim for prospective relief. And this Court has had a series of cases and has often not been convinced of that. In a case that only seeks retrospective relief, it's somewhat easier to convince the court of that. One way would be to formally offer to pay everything the person could get. What happened in this case and what's before the Court is simply, if that happens. So what happened here is there was an offer that was conceded to be adequate and the plaintiff suffered a judgment to be entered against her on the premise that she had no further claim. And the question is, if that interest is gone, which has been conceded at all stages of litigation until the bottom side briefing on the merits in this Court, what's the consequences for the collective action? So what the parties have litigated about, because this was conceded repeatedly over the course of several years, is what happens when that interest is moot. Now, we believe that it is correct that a defendant faced with litigation that it does not wish to contest can terminate the litigation. Ginsburg. What do you do when you have a governing statute that says that an employee may bring suit for and in behalf of himself and other employees similarly situated, and you use a mere rule, Rule 68, to cut out what the statute authorizes, that is, that the employee can seek relief on behalf of himself and others similarly situated, mustn't you give a chance for the statutory provision to work, which you didn't by filing immediately, you didn't allow the normal process of inviting opt-ins to occur? I think that the language of the statute, section 216b of the Fair Labor Standards Act, provides compelling guidance for the case that the court of appeals ignored. In this case, because it's under the Fair Labor Standards Act, the very paragraph you're looking at, Congress has opined, and I'll say it's only an opinion because the lower courts ignored it, but Congress at least has opined as to how you tell when people that are not yet before the court can be treated as relevant. And the answer is the non-party plaintiffs cannot be part of the case until they formally opt in. Ginsburg. Yes, but you have to give the plaintiff an opportunity. That's it. The statute does not say, if a plaintiff files a case and alleges that other people are similarly situated, the case shall not be dismissed until the court has proceeded to conclusively determine the propriety of certification. It doesn't say that. Suppose the plaintiff had simultaneously, with the filing of the complaint, moved to have it first preliminarily certified as on behalf of other employees situated. So instead of having the complaint, which was labeled a collective complaint, separate from a motion for certification, they came together. That the plaintiff filed a complaint and immediately filed a motion for certification and a request to discover the names of other people similarly situated. I think the answer to that would flow directly from this Court's decision in Garrity. The first question would be, at the time that the defendant's interest becomes moot, who is a party to the case? And the answer would be, well, it's just this one person. The next question would be, has the district court ruled on certification in a way that could have erroneously caused the mootness? Well, the answer would be no, because it became moot not because of an erroneous district court ruling on certification, which was the first question. Ginsburg. Ginsburg. So your answer is that it wouldn't make any difference? It wouldn't make any difference. What Garrity turns on, and I encourage you to look at the portion of footnote 11, the last two paragraphs of the footnote that goes on, they're on page 407. The Court emphasizes all we're saying here, all we're saying here is that if the basis of mootness is an error by the district court, and if we later ascertain that error, we will not only correct the error about certification, but we will forgive the mootness that flowed from that error. In this Court case, there's no suggestion that the district court error caused mootness to occur. Roberts. I don't know that you answered my question some time ago, but if the judge can simply order the two determinations in a way that certification is addressed before mootness, does that take care of your problem? Obviously, if he grants certification, there's an ongoing controversy. And under Roper and Garrity, if he denies certification, the relation back doctrine applies. I think that those cases provide a way to analyze that situation. So one possibility is that the district judge grants certification at some moment after the complaint is filed, and then later in time, the sole person who is in the case at that time loses their interest in the case for one reason or another. Now, there's no doubt that in that situation the case goes forward, right? There is doubt in that case, and we would suggest that it's clear that it doesn't go forward. Under the Fair Labor Standards Act, as opposed to Rule 23, which was at issue in Garrity, even after the district judge signs an order saying, pursuant to Justice Kennedy's opinion in Hoffman, we should send notices out to see if we can find some new plaintiffs, if none of those people have yet appeared before the Court and signed into the case, there's still only one plaintiff. So in Garrity, it was important to the Court that when the case got here, although the interest of the named prisoner had been vitiated, there were several people who had filed motions to intervene. And so it appeared that at all times there were other people. In this case, by contrast, there's every reason to think that after the person's interest was vitiated, there were no other plaintiffs, because why do we offer? Sotomayor, so can I ask a fundamental question under Rule 68? I mean, when I was a district court judge, if parties told me about their settlement discussions, I would get quite upset. But it says explicitly, evidence of an unaccepted offer is not admissible except in a proceeding to determine costs. What authorizes you to use evidence of that offer to argue anything? Especially when the statute gives the plaintiff an absolute statutory right to refuse it at a specific penalty. What permits you to use it as evidence of anything, mootness, I don't care what you're using it for, except in costs? Okay. So I would say two things. The first thing is, of course, the plaintiff did not challenge the use of the offer in the trial court. The second thing, responsive to your question on the merits, is trial courts have considered this question, have generally considered that the offer is admissible by analogy to Rule 408, which deals with settlement discussions more generally, and the advisory committee notes discuss this. And the general idea is the offer is being admitted for a purpose other than to prove the validity or amount of the disputed claim. And so this makes no sense to me, because if the offer is for judgment, it has to be proved of validity and amount, because at least you have to be able to get a judgment. Well, I think that the offer is not being admitted to prove the validity of the plaintiff's claim or the amount of the plaintiff's claim. The offer is being admitted to prove that the plaintiff has a particular perspective. Didn't you just tell me that an offer results in an admission of liability and a judgment for a particular amount? If the plaintiff accepts the offer, then the district judge will enter offer or enter judgment for the plaintiff in the amount of the offer. The district courts have considered, as have ordinarily concluded, that in cases where the offer is not accepted and the defendant contends that the offer is complete, that the offer can be admitted for the purpose of proving that there is no controversy between the parties, which is distinct from admitting it for the purpose of proving the validity or amount of the claim. Mr. Mann, could I come back to your response to the question of Knox, the statement in Knox that, you know, where the court can issue, can provide no relief, there is no standing. That was – I would have thought your answer to that is not – I mean, you answered it on the facts, but that statement was not meant to be exclusive, that that's the only situation in which there is no standing. It was addressing just the third prong of our standing doctrine, namely, the prong that where the court can issue no relief, the remedial – the remedial prong, that one of the elements of standing is the court has to be able to provide relief. But there are other elements to standing as well, including whether there's injury in fact, and whether the injury is, you know, springs from the action that is challenged. And those – those prongs would continue to exist. I didn't think Knox's statement was meant to be all-inclusive, that that's the only – only way in which standing can be eliminated. I think that's correct, Justice Scalia. And so the problem that we face here is the questioning relates to something that has – was not disputed below. And our position is a relatively simple one, which is that under the doctrine of mootness, it has to be correct that if there's not a controversy between the plaintiff and the defendant about a cause of action authorized by law, then the case is over. And that was all conceded below. The plaintiff suffered a judgment to be entered against her. She did not challenge that judgment. But Mr. Mann, your own. I'm sorry. Alito, this question, does the district court have the authority when an offer of judgment is made to hold a hearing as to whether the offer of judgment actually gives the plaintiff everything that the plaintiff could possibly get under the complaint? We think that's the appropriate response. We think that what should happen is that if the defendant makes an offer of judgment and files a motion to dismiss, suggesting that it provides complete relief, that if the plaintiff doesn't concede that the case should be dismissed, the district judge should hold a hearing as the district judge did here. Where does it say that in Rule 68? The proceeding isn't under Rule 68. What is it under? The proceeding is under Rule 12b as a motion to dismiss for lack of jurisdiction because the case is moot. See, we don't think that it matters that the offer happened to be under Rule 68. There are obvious reasons. Your offer says you hereby offer to allow entry of judgment under Rule 68. But we don't think that the mootness of the case flows from Rule 68. The mootness of the case flows from the fact that there's not a dispute between the parties about anything the Federal court can handle. Kennedy, but the question from Justice Alito was what happens? Does the Court have authority to have a hearing? And you said, oh, well, this is not under Rule 68. But you offered to allow entry of judgment under Rule 68. And incidentally, you never did follow up and say that you wanted an entry of judgment. You just wanted a dismissal, and that's another point. Well, but because the plaintiff didn't accept the offer. One course of action is we make an offer under Rule 68, and the plaintiff says, all right, let's have a judgment under Rule 68, in which case there would be a judgment under Rule 68. In this case, the plaintiff said, I'm not interested in Rule 68. And we said, all right. Well, now what we see is a cause of action under Federal law Congress has created that specifies certain forms of relief that are available to the plaintiff. In this case, there are damages, some liquidated damages, some attorney's fees and costs. There's no injunctive or declaratory relief. And we have a defendant that is willing to give more than you could possibly get if you wanted. Was there attorney's fees in that offer? I thought there wasn't in this case. Yes, there were. The offer specifically provides for attorney's fees, and even if the offer didn't provide for attorney's fees, they would be available under Section 216B. But are we to decide, take it, is a statutory case, not a constitutional case. That is, do you have any constitutional objection if Congress had said in 216B that Joe Smith and other people, similarly situated to Ms. Laura Shimczyk, have a genuine dispute with the employer, and the way they file their case is Ms. Shimczyk's case will be deemed to be their case as well, though it ceases to be their case unless they confirm within 60 days of such-and-such in writing that it is their case. If Congress passed that statute, there couldn't be a constitutional objection to it, could there? Well, I think there could be constitutional objections, depending on the details of the statute. No, no, no. You see what I'm driving at. In other words, if Congress had explicitly said in 216B that the Third Circuit's procedure is the correct procedure for Mr. Joe Smith to bring his case in such circumstances, if they had said that explicitly, is there a constitutional objection? If so, what could it be? I think the constitutional issues that proposals like that might raise would flow from the decision in Vermont agency. And the question has to be whether there's a person before the court. Well, we know at least since we're doing — I looked up a little bit, but Article III is what was a case or controversy in Westminster in 1788 or 1750 or whenever, that in Westminster, in a court of equity, I found at least two instances where a person dies, there's no case with that person, but it remained in equity on the docket until the other person, the estate, came in. A woman could not bring a case if she was married. She starts as a single person. She gets married. Lo and behold, the case remains on the docket until her husband comes in. That's not a happy example, but nonetheless, it's in point. Now, I could find nothing the other way, so I thought of the canon of interpretation that equity deems to have been done what ought to have been done or something like that. Others on the Court will know. But the point is that there are instances. Scalia's wonderful. What? Yes. It remained on the docket in the Westminster courts, even though there was no plaintiff. So I would ask you again, is there any counterexample? Is there any instance from equity or elsewhere where there is a constitutional objection, had they said it, at which point our question is, have they said it? I think the problem is, in that case, there's an identifiable person to substitute. In this case, it's not substituting somebody for the plaintiff. It's leaving the Federal Court. Oh, no, it's Mr. Joe Smith, if he confirms it in writing. The problem in this type of case would be that the Federal proceeding would be moving along for a substantial period of time with no plaintiffs, and the district judge's role would be simply to assist the plaintiff in trying to find new plaintiffs, counsel in trying to find new plaintiffs. I'll bet you equity could have considered the husband to have been substituted automatically and could have considered the estate to have been substituted automatically. That happens when that particular element is eliminated. But there's nothing automatic about discovering some new plaintiff who is out there. We don't know who's out there. On that note, I'd like to reserve the remainder of my time. Thank you, counsel. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to begin with the question of whether a withdrawn Rule 68 offer could moot a case. It cannot. This Court has said that Article III's case and controversy requirement demands both a plaintiff with a concrete injury and a matter where the Court is fully capable of providing relief. I'd like to begin with the question of whether or not you waived that argument. Absolutely, Your Honor. Did you waive it or not? We did not waive it. We do think that the brief in opposition should have pointed it out. Absolutely, it was a mistake on our part not to bring to the Court's attention the impact of an unaccepted Rule 68 offer. However, we do think that this Court can consider that. And the reason for that is that it is an answer to the question presented. Indeed, it is literally the question presented. Here is the question presented, as my friend Mr. Mann wrote it. Whether a case becomes moot and thus beyond the judicial power of Article III when the lone plaintiff receives an offer from the defendants to satisfy all of the plaintiff's claims. And we submit that the answer to that question is no, that the mere receipt of an offer without more cannot possibly moot a case. Well, that was not the way the case was presented in the body of the petition. And I would suppose, if that were your objection, that it wasn't received, wasn't accepted, we might have heard about that, as you suggest. And if, in fact, we thought we were dealing with a case in which the Rule 68 offer was not accepted, we might have thought differently about whether to grant it. I completely understand that, Mr. Chief Justice. I guess I would say, however, this Court in Lebron confronted a similar situation in which the matter of whether Amtrak was a State actor was not present in the cert papers. Indeed, it had been disavowed, as Justice Scalia's opinion for the Court said. Nonetheless, the Court considered it and got into the merits of that question. And we think here, actually, it's an easier case for the Court to get into than Lebron. Roberts, your question doesn't have that feature in it. It does have the unaccepted offer feature in the question. And, of course, this Court's decision in Bray does say that it is the question presented as the Court granted it that controls. Counsel, there's – from the beginning, you never accepted the offer. That's exactly right, Justice Sotomayor. What you appear to have conceded is that the amount of the offer would settle your personal claim. I don't quite think we conceded even that. That's a separate matter. That's about what the terms of the offer were. And our first point to you is to say this offer wasn't even accepted. Mr. Mann is waxing nostalgic about an offer that literally has not given Ms. Simchick a dime. She is as injured today as she was the day she filed her complaint.  If a defendant comes forward and says, I'm willing to satisfy the entire claim, what should happen? If we think that, just like the Solicitor General, we think that in that circumstance it is possible for a court to enter a default judgment and force relief upon the plaintiff. Is this under Rule 68, or is this under some inherent authority? I think it could work either way, so long as the forcing happened within the time period of Rule 68. I don't think, like, the Court can, like Lazarus, raise this after it has already been withdrawn. The text of Rule 68 says the offer is now dead. If they had, I imagine, moved for the Court to enforce that order, enforce the offer and enter a default judgment within the 14-day period, then I think that would have been something that might have been possible to do. Roberts. What benefit does this — why are you arguing so much? You will have an entry of judgment in the favor of your client, who is, according to you, similarly situated to lots of others. Why don't you just — if somebody comes forward, just take them in, go in, you get a check for 7,500 or whatever it is, you get attorney's fees, and you can do that as often as you want. For two reasons, Your Honor. First is, of course, that is precisely what didn't happen here. Ms. Simchick has zero, not even the 7,500. Roberts Well, I know, but that's the fortuity of the fact that she didn't accept the offer. And we're dealing, perhaps, with a case on the record as presented to us where she did accept the offer, if you waive that argument. So assume the case where the offer is accepted. Katyalin. And I think it goes back to what then-Justice Rehnquist said in Roper, because what he said is it's not then just about the individual plaintiff. You can't force an offer onto a plaintiff that doesn't have all — doesn't award complete relief, because if you do so, it undermines the collective action aspect of the claim. Scalia Well, it undermines the collective aspect if she never brings the suit in the first place. I mean, I must say, I'm not terribly impressed by the fact that, you know, if she drops out, there's no collective suit for these other people. There's also no collective suit for these other people if she never appeared in the first place. I don't know that the law demands that there be a collective suit. If she doesn't bring suit or if she brings suit and is given everything she wants, the case is over unless other people have come in. Katyalin. Justice Scalia, we think that Congress has answered that question, at least, in 216b, by providing for both the opportunity to file a complaint on her own behalf as well as for those that are similarly situated. And so I think that, as Justice Ginsburg said to my friend, if you adopt their rule, essentially you truncate that process and eliminate the ability of people to opt in in any given situation. And that — for that reason, it's very much, assuming that we get to this question, that it is very much like Gerstein or Sosna or Roper in that circumstance. Sotomayor, I'm a little troubled that you have given up or argue that the ability to enter a forced judgment is permissible under Rule 68. There is nothing in that rule that gives the Court that power, certainly not stated explicitly or even implicitly, because it talks about an entire procedure of accepting the offer or rejecting it, all of it in the hands of the parties, none of it until the entry of the judgment in the hands of the Court, and only after the plaintiff has accepted the offer in writing. So I can't see anything but an inherent power. So for me, if there's an inherent power, it has to be under a default judgment, because the other side is saying, I give up. Exactly. That's the idea. Sotomayor, so let's go from there, at least with me, and that may answer an earlier question about an inquest on damages, because that is a part of the requirements for a default judgment, so that if there's a dispute about damages, that can be resolved. But my point is that liability is admitted. Now let's deal with the Chief's question and Justice Scalia's question, which is, in what ways is this comparable to a shared cost, like what motivated our decision in class actions, that the settlement of one existing plaintiff doesn't settle the collective action? How is this similar to that? So we think that the corpus of cases that this Court's handled in the class action area, such as Garrity and Gerstein and the like, we don't think they absolutely control this question. I don't want to say that. We think that they set out two principles that help inform the Court's judgment. The first is that when you have circumstances like this in which a claim has gone away as moot because the named representative, the claim has gone away for one reason or another, there's play in the joints. Essentially, you can have a bridge plaintiff who acts to keep the case alive for purposes of letting the class unfold. That's really what then-Justice Rehnquist was getting at in his decision in Roper. And we think that there's a lot of force to that, because otherwise, as Justice Ginsburg mentioned, the collective action mechanism doesn't even get off the ground. Ginsburg. Well, you don't accept the argument that I suggested, that is, Rule 16, 216, the Fair Labor Standards Act, in saying that you can commence a suit on behalf of others similarly situated. And implicit in that is that there be some decent interval for you to find similarly situated people. We absolutely agree with that, and we think that's precisely the problem in this case illustrates it, Justice Ginsburg, because they — we filed their complaint and 75 days later they filed their preemptive Rule 68 offer, and now they're coming before the Court and saying something even more radical than I think any court has accepted to my knowledge, which is even filing a class certification motion along with the complaint wouldn't be enough. That is something that would essentially cut the heart out of the collective action mechanism altogether. Ginsburg. Why didn't you file the motion for certification along with the complaint? Because the text of Rule of 216b provides for two different processes, both the filing of the complaint and then a subsequent opt-in process. I suppose we could have done that. That's what the Seventh Circuit has said to do in a case called Damasco. But this Court's decision in Hoffman-LaRoche says the entire collective action mechanism depends on notice and discovery to find out who those people are, to find out and make sure that they are still in. But you could have done that with the complaint, and I don't see there's an — you say you want to get joiners, so why do you have to wait? Why wouldn't you — why wouldn't the most logical thing be to say, Court, we've labeled this a collective action, and now we want to start the ball rolling in getting certification? Your Honor, that is what we did. You know, we asked the district court, right after the Rule 68 offer expired, within 4 days, to say, please set up a class certification process. And that process was then interrupted by their subsequent motion, after the Rule 68 offer had expired, to say, this case is moved. Roberts, does it matter in terms of what the judge is supposed to do with your motion to certify if nobody else is in the case? I mean, isn't that one of the factors? I don't know if it's even a sort of good-faith pleading. If you want certification, but there's nobody else there. That's precisely, Mr. Chief Justice, why we think the Seventh Circuit rule doesn't make much sense. To come in and to ask for certification before you've conducted the discovery and gotten the names, we think is really not the right way to go. Rather, I think this Court's decisions in Iqbal and Twombly suggest that you've got to go and file a motion for class certification. And I'd be very hesitant for this Court to recommend a rule to litigants that says go and file your motion for class certification right away. This Court in McLaughlin, I think, essentially said that it's not about the timing of when that motion for certification unfolds. At 500 U.S. page 68, the Court said, The fact the class was not certified until after the named plaintiff's claims had become moot does not deprive the court of jurisdiction. We recognize in Gerstein that some claims are so transitory, inherently transitory, that the trial court will not even have enough time to rule on a motion for class certification. Breyer, we're interpreting the statute. And I'm trying to look at what document are we interpreting. Is there a different rule or different? What rule? So I come back to the statute, and Congress could provide exactly the system that you suggest. I don't see anything unconstitutional about it. But isn't it a little hard to read this statute as providing that mechanism, since what it says is no party shall no plaintiff – you know, it says what it says in the last two sentences. How do we read that to foresee the mechanism that you're talking about? Right. I take it this is Mr. Mann's point, that people who aren't yet opted into a class are not parties, and therefore the court can't properly consider them. And I think that's the same exact thing in the class action context. Is this correct? Well, he says the difference in the class action context is, in the class action context, you can consider them there, but there isn't a specific sentence somewhere in a statute which says no one shall be a party unless he signs in writing. Your Honor, I think nothing turns on their designation as party status or not. Rather, the Relation Back Doctrine, to the extent the Court wants to get into it and deem this offer where we got nothing, somehow they want to deem it against us. But if it does and wants to get into the Relation Back Doctrine, I think it would be helpful to find that it is based on the idea that the cases would otherwise go away, and that you need a bridge plaintiff. And that's the important reason. Breyer, why, why is my question? The reason for that goes back to this Court's decision in Flast, in which it said that in the kinds of cases we're talking about here, it's not as if we're risking a merits judgment in which relief is going to be imposed against one party and possibly trench on the separation of powers. Rather, the worst that happens, if you rule for us or if you ruled for the plaintiffs in those cases, is that the case goes back down on remand to find out whether or not any of those parties can be identified and come forward. If they do, then you can reach the merits. But this is a very different separation of powers inquiry than the one — and a case in controversy inquiry than the one that the Court traditionally handles. Scalia, it's hard for me to accept the relation-back doctrine for your purposes when it's clear under the statute that if parties come in beyond the statute of limitations period, they're not in. Their entry is not deemed to relate back to the filing of the original complaint, is it? For purposes of the statute of limitations. For purposes of the statute of limitations. So you want one relation-back doctrine for the statute and a different one for what we're discussing here. Absolutely. And we think actually — I know you do. And, Justice Scalia, we think that that statute of limitations argument cuts the other way. So the statute of limitations provision, which is section 255, says that in determining when an action is commenced for purposes of the statute, and so we don't think it bears on the question or not of whether relation-back applies. Much to the contrary, the real worry in the class action context, and indeed my friend's opening line is, these cases are going to linger forever and the defendants are going to have no tool. But in the Fair Labor Standards Act context, actually, it's the very reverse, because every day counts against the plaintiffs and their counsel. They're incentivized to bring these cases quickly because the clock is literally ticking. And so you don't have, I think, the same worry that you do in the regular class action context of one plaintiff who can essentially save the day for all of the different — for all of the different parties. Kagan. Mr. Katyal, if we do get to the question that Mr. Mann wants us to raise, you spend a lot of time talking about McLaughlin and talking about Gerstein. Those cases were about prospective relief. You're asking for retrospective relief. Why doesn't that make a difference? We think that it is a difference, but we don't think it's enough to change this. And it's for the reasons that then-Justice Rehnquist said in Roper. Here is what he said. This is at 445 U.S. 341. The distinguishing feature here is that the defendant has made an unaccepted offer. The action is moot in the Article III sense only if this Court adopts a rule an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims. Acceptance need not be mandated under our precedents, since the defendant has not been offered all that has been requested in the complaint, i.e., relief of the class, and any other rule would make the questions unreviewable. And it's the same point he's talking there about a retrospective action for damages. The rule that we're seeking here is no different than what then-Justice Rehnquist said in Roper. Kennedy, do we take this case on the premise that you would have objected if a judgment had been entered in your favor for the full of amount plus attorney's visa? I think you should. And this is a response to what Justice Alito had said in the first part of the argument. It is not as if we didn't ask for a hearing. Absolutely, we asked for a fairness hearing at Joint Appendix page 110 in the district court and then again at the Third Circuit. And what we asked for specifically was review of the contours of the offer. This is at Joint Appendix page 110. We said, quote --"Excuse me, 111. There has been no review and or approval by this Court of defendants' offer of judgment to the plaintiff. And for that reason, we said, quote, "'Dismissal' is inappropriate at this early procedural juncture.'" So this case comes to the Court. Abbott asked that particular question about the contours of the offer. We think that an offer that never gave Ms. Simchick anything is one that didn't make her whole. And for that reason we think that the plaintiff's claim isn't moved until a judgment is entered into her favor, but that issue was not preserved. Can you give me an analog that I should think about with respect to the second question? Sure. Should I? Yeah. I think that the best way to think about it is the category of cases from Geraghty, Gerstein and Swisher suggest that if you wanted to hold that offer against us, that you would then say, as Judge Sirica did, the Relation Back doctrine looks similar enough to the 216B context in this specific area, because otherwise the 216B collective actions won't work the way Congress intended them to work. Well, should I assume that this is the same, the case would then be the same as if a default judgment had been entered in your favor for that amount? I think it's hard to know how you'd hold that offer against us, and the way in which you did so, I think, informs that second question, and that's part of the reason why we think it is a predicate question. I suppose that, yes, you could say, one path available is to say it is a default judgment now that is imposed on us along the lines of the Second Circuit decision, and if so, then, as the Solicitor General says at pages 15 to 18, the then-appropriate course would have been for the district court to evaluate whether other people could opt into the class using the procedures of Hoffman-LaRoche. Sotomayor, you forget the step the Court had to evaluate whether the offer actually met your personal damages claim, too. Oh, absolutely, Justice Sotomayor. And what you're saying on those pages is the Court didn't even do that. Exactly. I was proceeding on the hypothetical that for one reason or another the Court can't reach that question, and we think Lebron absolutely permits this Court to do so, and we think it's prudent for this Court to reach that question first, because you can question about exceptions to Article III mootness and the relation back doctrine. Thank you, counsel. We'll hear from Mr. Yang now. Mr. Chief Justice, and may it please the Court. Respondent has never been compensated for her individual damaged claim, nor has she received a court judgment favorably adjudicating that claim. It follows that her individual claim remains live, as does this collective action more generally. A settlement offer does not moot a claim if it's not accepted. Individual freedom of contract is basic to our legal system, and mutual assent is always a necessary element for any settlement. Rule 68 embodies those principles. Breyer, how does that differ from an employee who says he's annoyed for a variety of reasons at the employer, and he sues the employer for his pay, for his pay for the month of October? The employer says, he got his pay, I sent him the check, I mean, he gets it every month, and he says, yes, but I didn't cash the check. Is there a case or controversy? He can go sue for his paycheck that he didn't cash? Well, if you're – I'm not sure what the injury would be in that case. Okay. So why is it any different when the defendant, employer, says, here's the check? And he says, oh, I didn't cash it. This, I think, speaks somewhat to Justice Scalia's point earlier on, which is there are three elements to Article III standing, and it also carries through a bit to mootness. One is an injury in fact. When we're talking about retrospective claims, there is a past injury. If you get a payment or a court redress, it doesn't eliminate the injury. The injury continues to exist. Redressability. Now we have a case if the employer, for some reason, a mistake in bookkeeping or something, didn't send the check on time, so it arrived three days late. And he says, ha, I'm not cashing the check. Now I can sue him. Right? That's your theory. Well, if there is a violation of the Fair Labor Standards Act, and I'm not sure that that would be a violation of the Fair Labor Standards Act. No, no, no. He's a contract. You know, he's paid every month, the end of the month. Well, if there is a breach of a contract, that is an injury. And it is a past injury. The employer gave him the paycheck, just didn't cash it, plus the damages for the three days. If I can just finish, I think it is a past injury, it is traceable to the defendant, and it is redressable because the requested relief would redress it. There may well be a defense on the merits. It may well be that there was payment. It could be accorded to the employer. Roberts. Roberts. I'm not sure I understand. You think there's a live case, not if he doesn't cash it, but I guess as Justice Breyer was asking, if it's a day late. You said, well, there was a past injury, it was a day late. It could be redressed by telling him what, pay him again, or? Well, no. I guess there's a few questions. If the defendant had paid the plaintiff, then you would have what is traditionally known as, and it's accepted, you would have accord and satisfaction. It is an affirmative defense in Rule 8c. Well, you'd also have what's usually known as no injury. Well, again, I think it's important to distinguish between injury and something that redresses an injury. Redress of an injury, like a court redress, which is the only question that's relevant in Article III. Whether the requested relief from the court would redress the injury. So you think a court has to go through the whole process of a trial if the check is a day late and the employer says, I'm sorry, here's, you know, whatever the interest is on the check? No, certainly not. And this is what we say is the right approach, although it's not a question of mootness. If an employer comes in and throws up their hands, the court says, it's not worth it. I want to forfeit. I want to just pay the judgment. And by the way, this would not have issue preclusive effect, notwithstanding my friend's statement earlier. Could you directly answer my question? The court can simply enter judgment. It can simply enter judgment to stop pointless litigation. That's the normal course, is that if there is a past injury, it's redressable, but the defendant comes in and either says, according to satisfaction, so there's no merits claim, or I just give up on the merits. Roberts. Or the plaintiff says no standing. Well, no. Again, I don't think it's a question of standing, because there's two issues going on. Standing has to exist at the beginning of the suit. It's assessed at the date that the complaint is filed. And as we've said, at every stage of the litigation. Right. That's the mootness inquiry, then. It has to continue to persist throughout the litigation. Now, the fact that you have had some redress of some sort in the form of a private contract, that doesn't eliminate the past injury, nor does it mean that the court could not, if the court were to give additional damages relief. So if you're due, if you're due $100 from your employer, it's a day late, he gives you $100, and he says, well, here's another dollar for interest, that, as you said, doesn't eliminate the past injury? It doesn't eliminate the injury. It might be compensation for the injury. The injury would be, once a past injury occurs, it's there. It's unlike a prospective injury, which can be stopped. When you seek injunctive relief, you need to have an imminent or ongoing injury. If the defendant stops, that can eliminate the injury, and then you go into questions of voluntary cessation. But with respect to past injury, it's quite different. Now, I think the possibility of courts wasting their time on these cases is quite small. There's all kinds of incentives for a plaintiff not to bring these suits. There's questions of vexatious litigation. But that's not what we have here. We have in the Fair Labor Standards Act a judgment by Congress that employees are to have a right to go forward in the collective form. And as Justice Kennedy's opinion for the Court in Hoffman v. LaRoche recognizes, Section 216 imposes upon district courts a managerial responsibility to join plaintiffs in an orderly way. And the collective action ties in with other aspects of the Fair Labor Standards Act. The action is designed, as Hoffman v. LaRoche says, to serve the important function of preventing violations. It also says that the collective action is being enforced to the full extent of its terms. These are judgments that Congress made because they were trying to protect particularly vulnerable employees in our society. These are nonunionized, generally, low-wage employees without bargaining power. Congress created liquidated damages in order to provide a strong deterrent for employers to comply with the law. And also- Scalia-Mr. Yang, would you continue with what you started speaking to issue preclusion? Because I'm also ‑‑ I think it's questionable whether there would be issue preclusion on the basis of a judgment issued with the concession of the defendant. Yang, this is page 14, footnote 2 of our brief. Issue ‑‑ there might be claim preclusion in that the defendant would not be able to bring other claims associated, a traditional res judicata. But for a judgment entered by a concession, the actual issue is not litigated and necessary to the judgment. And so it's well established that that would not serve any issue preclusive effect. And in fact, I think if it did, it would put a chill on the ability of people to settle their disputes through offers of judgment. So our solution that we provide the Court, we think, is the only solution that provides a practical way to accommodate the very important interests that are at issue in this case. One, it recognizes the district court's discretion to resolve the case in a sensible way in order to- Kagan. Do you think it would be ‑‑ I mean, I take the point completely that judgment was rendered against the wrong party here. But if the judgment had been rendered against Ms. Simzik, for Ms. Simzik, but the Court had done so prior to looking at the whole class question, do you think that that would be an abuse of the Court's discretion? Do you think that the Court has to look at the class question before rendering judgment for an individual plaintiff? In the context of a collective action, yes, because of the congressional policy that gives plaintiffs a right to proceed collectively. That said, the collective process does not have to be a burdensome one. There are certain small claims, idiosyncratic claims that a court can simply look at the allegations and say there are not going to be similarly situated people here. But when we have an allegation like we have here, which there is a widespread policy of deducting 30 minutes a day, notwithstanding the employer's knowledge that the employees are working through that lunch break, there is every reason to think that there is a substantial body of employees similarly situated. And it would be an abuse of discretion for the Court not to proceed, at least down that road, provide some discovery, facilitate class notice, as the Court in Hoffman and Roche recognized was the appropriate thing to do under Section 216. And at the end of that process, which could be short for some cases, a little longer for some, should be, of course, always exercised in the Court's sound discretion. At the end of the case, if there are more plaintiffs who opt in, then it proceeds as a collective action. If it remains the single plaintiff, the Court might decide to enter judgment. Now, we don't think that follows, Justice Sotomayor, from Rule 68. It simply follows from the fact that a defendant is willing not just to pay, to give up. It won't have issue preclusive effect. It resolves the dispute, judgment in the amount of $7,500. Sotomayor, what you're talking about is imputing into this process a fairness hearing, essentially, to see by the district court to determine whether this is a quirky case where you enter the judgment and you don't need a collective action, or whether or not this is a genuine case that requires joining plaintiffs. May I answer a question, Mr. Chief Justice? I don't think it's a fairness hearing. I think what it does is it's a question about whether there are people similarly situated. And if there are plaintiffs similarly situated, the case should proceed. If at that point the defendant wants to pay everyone, certainly could do so. But my guess is usually the claims will be litigated on the merits of that point. Thank you, counsel. Thank you. Mr. Mann, you have 4 minutes remaining. Thank you, Mr. Chief Justice, and may it please the Court. I think the most useful thing to do is to address the point that Justice Breyer has raised several times, because I think it's important to discuss the relationship between what I would call the statutory facts and the constitutional questions that they might raise. And so I do think it's fair, in a sense, to think about this as a statutory case. When a plaintiff files suit in a Federal court, often the cause of action rests on a statute that Congress has adopted. Those statutes have a lot of attributes that Congress can control that make it easier or harder for a defendant to make an offer of complete relief. They can provide for mandatory shifting of attorney's fees, as this one does. They can alter the rules for shifting costs, as perhaps the Fair Debt Collection practice that I discussed from last month. They can provide for injunctive or declaratory relief, which makes it basically impossible. But Congress gets to decide when they write a statute whether they want to make it a statute for which it's free to use. Breyer, that's true. And so what we would be reading into this statute is a relation-backed doctrine, which happens every day of the week in a class action case and has historical analogies. So I understand the difference you're pointing to, but why not read that in? It would be fair and it would get the job done that Congress sets up in the statute. That's the argument the other way. And that leads me to the second point I wanted to make, which is exactly what's the constitutional problem. And I think the way to get to it is when my colleague, Mr. Kachan, refers to the worst that happens. Well, the worst that happens, I think it's important to understand what the worst thing is that happens. The worst thing that happens is the case is on the docket of the Federal district judge and there is no plaintiff with an interest. And the procedure in the district court is we should spend some time, have some discovery, look around to see if we can find another plaintiff. And so I think that that's a different problem from how the district court should decide the order of hearing of deciding motions. If the problem is the plaintiff is not a plaintiff, it's a plaintiff who is not a plaintiff. Ginsburg's point, Mr. Young just told us it's so, that there would be no issue preclusion because there's been no adjudication of anything. Then it seems to me that this case falls into a classic exception to mootness, which is defendant's voluntary cessation doesn't moot a controversy, and this controversy is capable of repetition, yet evasive review, because every time the plaintiff has got this judgment, not preclusive, the employer continues in the old ways. The plaintiff sues again. This seems to me to fit exactly into that category of case. If there's no issue preclusion, defendant doesn't have to stop the practice, can continue the practice, and then every time there's a suit, say, okay, we'll pay the judgment. So I spoke it artfully before. Obviously, there's a difference between claim preclusion and issue preclusion. And what I was attempting to say, inartfully, I will agree, was the extent of preclusion will depend on the issues that are actually litigated in the proceeding. And so I don't think that's the case. Ginsburg's claim preclusion is going to apply because there's a judgment by POTS. Ginsburg's claim preclusion, but the claim is for this period of time I wasn't given the compensation. That's the claim. And then it's another period of time and there's no issue preclusion. But in this particular case, there's no further dispute likely to occur between these parties. These --"she no longer works for us, there's no reason to think she's going to work for us again." The Court has extended the capable of repetition and abating review to class actions in three cases, Gerstlein, Riverside, and Swisher. But in those cases, what happened was the plaintiff sought prospective injunctive relief. The case became moot. If the Court had held that those cases were outside of Article III, the result would have been that the defendant could have been engaging in a conduct that allegedly violated Federal law and would never have had to change. In this case, what happened, in this case and in the cases like this, what happens is someone seeks purely prospective relief, retrospective relief for something, an injury that is complete. Except for their attorney, she would have received complete relief. We didn't engage in our conduct any longer. Roberts. Thank you, counsel. The case is submitted.